In the Matter of SEYMOUR S. DETSKY, an Attorney, Respondent. ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, Petitioner.

First Department, July 3, 1962.

*Eric Nightingale* of counsel (*Michael Franck* with him on the brief), attorney for petitioner.

*Edward J. McCullen* for respondent.

*Per Curiam.* This is a disciplinary proceeding brought under section 90 of the Judiciary Law against an attorney and counsellor at law. Hearings were held by a Referee on the charges contained in the petition, and his report finds the charges in part sustained. In substance, respondent was found guilty of unprofessional conduct in representing an estate, including conversion of assets, and in repeatedly issuing checks drawn on his accounts against insufficient or uncollected funds.

Although the Referee was perhaps overly generous toward respondent, resolving small doubts in his favor, the report, notable for its comprehensive and careful analysis of voluminous testimony, should be confirmed.

Respondent, born June 6, 1921, was admitted to the Bar in this Department on March 4, 1946. Since his admission he has been, primarily, a single practitioner, although for a time he employed an associate. His practice has been a modest one, principally in the real estate field, and the estate matter out of which a part of the charges arose was the largest single matter he had handled.

In the Summer of 1958, respondent was retained by the widow of a deceased client to represent his estate. Respondent had drawn the decedent's will and had performed other legal services for him over a 12-year period. From the outset, the handling of the estate posed unusual difficulties which need not

be detailed. Suffice it to say that the widow sought to deceive the Surrogate's Court concerning her husband's relatives and proved to be difficult with respect to the management of the estate. A will contest developed and respondent thereupon retained trial counsel with the widow's approval.

It is out of respondent's subsequent relations with the widow and trial counsel that the principal charges of misconduct arose. Respondent had agreed with trial counsel to charge a total fee based on a percentage of estate assets and to share the fee equally. After the will contest was settled and the estate came into the widow's hands, respondent met with her and presented a bill for $30,000 submitted by trial counsel which included the fee of both attorneys. Respondent requested payment of twice the amount appearing on the bill, or $60,000, and it was charged in the petition that he misrepresented the bill as covering trial counsel's services only. Although the Referee did not find this charge sustained, on the ground that the widow's testimony in this regard could not be relied upon, he recognized that respondent's explanation of the matter was not wholly satisfactory. In previous testimony at a grievance committee hearing, respondent acknowledged, in effect, that he had not informed the widow of the arrangement with trial counsel to share equally the amount appearing on the bill. However, before the Referee he testified that he did so inform her and that he requested twice the amount of the bill to cover estimated unpaid estate expenses as well as counsel fees.

The widow signed a check for the requested amount, which respondent had prepared and which, at the widow's insistence, was made out to himself '' or '' trial counsel. The cancelled check offered in evidence bore the indorsement ''for services rendered'', followed by trial counsel's name and respondent's signature. While admitting that he signed trial counsel's name without authority, above his own signature, respondent asserted that he did so in the widow's presence and at her request. The Referee accepted this explanation.

Respondent deposited the check in his personal account and, within a few weeks, withdrew all but approximately $8,000 for his own use. It appears that he did so to meet pressing personal obligations. Respondent's position is that his acceptance of the $60,000 created only a personal debt to the widow and to trial counsel for a part of the total sum and that until he saw fit to pay the debt the money was his own to do with as he pleased. This is indeed an extraordinary view of the financial responsibilities he undertook and can only be characterized, charitably, as a belated rationalization constructed to place a better light

upon reprehensible conduct. The Referee properly rejected the theory and concluded that the funds were converted to the extent that an insufficient amount was retained intact and segregated for unpaid estate expenses and trial counsel's fee. It should be noted, however, as did the Referee, that respondent ultimately paid the expenses as well as the fee, albeit such payment could not eradicate the initial conversion (*Matter of Ellenbogen,* 3 A D 2d 237; *Matter of O'Doherty,* 14 A D 2d 4, 8–9, affd. 11 N Y 2d 1028).

For nearly a year, trial counsel repeatedly requested payment of his fee and respondent admittedly led him to believe that the amount due had not yet been received from the widow. After several months respondent did remit approximately one half of trial counsel's fee, but he retained the balance, explaining to the Referee that he wanted to be in a position to bargain for a reduction. Finally, after trial counsel learned from the widow of the $60,000 payment, respondent paid over the balance of the fee with interest.

Turning to the charge of issuing checks drawn on insufficient or uncollected funds, it appears that respondent issued more than 100 such checks over a two-and-one-half year period. He continued the practice after the grievance committee had received a complaint concerning a $15,000 check drawn for an estate expense, and even continued issuing the checks during and after grievance committee hearings on the subject. There is no evidence, however, that anyone suffered any financial loss as a result of such checks. Indeed, respondent indulged himself in the same manner after the present charges were filed and persisted until shortly before the Referee's hearings began. The circumstances here reflect an extreme lack of financial responsibility.

As noted, respondent carried on a modest practice, and the estate matter presented an unusual challenge which he was not fully equipped to meet. The Referee found him to be a competent, industrious attorney, often representing clients of little means and receiving small fees or none at all. Although his serious misconduct cannot be overlooked, it is of considerable significance that he is apparently a useful member of the Bar. In this respect the conclusions of the Referee and respondent's character witnesses are credited.

Were it not for the fact that respondent's principal troubles arise out of one substantial matter, which evidently overwhelmed his normal ethical restraints, and that his troubles were precipitated by a particularly difficult client, more severe discipline than is being imposed would be merited (see, e.g., *Matter of Vyner,*

12 A D 2d 10; *Matter of Sohmer,* 3 A D 2d 89). Moreover, respondent has not been the subject of any other disciplinary proceedings, and the Referee was evidently greatly impressed with the nonrecurrent character of his principal misconduct (cf. *Matter of O'Doherty, supra,* p. 10 and cases cited).

Accordingly, the Referee's report should be confirmed and respondent should be suspended for a period of one year.

BREITEL, J. P., VALENTE, MCNALLY, EAGER and STEUER, JJ., concur.

Respondent suspended for a period of one year.